(Slip Opinion) OCTOBER TERM, 2013 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## POM WONDERFUL LLC *v.* COCA-COLA CO.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 12–761. Argued April 21, 2014—Decided June 12, 2014

This case involves the intersection of two federal statutes. The Lanham Act permits one competitor to sue another for unfair competition arising from false or misleading product descriptions. 15 U. S. C. §1125. The Federal Food, Drug, and Cosmetic Act (FDCA) prohibits the misbranding of food and drink. 21 U. S. C. §§321(f), 331. To implement the FDCA's provisions, the Food and Drug Administration (FDA) has promulgated regulations regarding food and beverage labeling, including one concerning juice blends. Unlike the Lanham Act, which, relies in large part for its enforcement on private suits brought by injured competitors, the FDCA and its regulations give the United States nearly exclusive enforcement authority and do not permit private enforcement suits. The FDCA also pre-empts certain state misbranding laws.

Petitioner POM Wonderful LLC, which produces, markets, and sells, *inter alia,* a pomegranate-blueberry juice blend, filed a Lanham Act suit against respondent Coca-Cola Company, alleging that the name, label, marketing, and advertising of one of Coca-Cola's juice blends mislead consumers into believing the product consists predominantly of pomegranate and blueberry juice when it in fact consists predominantly of less expensive apple and grape juices, and that the ensuing confusion causes POM to lose sales. The District Court granted partial summary judgment to Coca-Cola, ruling that the FDCA and its regulations preclude Lanham Act challenges to the name and label of Coca-Cola's juice blend. The Ninth Circuit affirmed in relevant part.

*Held*: Competitors may bring Lanham Act claims like POM's challenging food and beverage labels regulated by the FDCA. Pp. 7–17.

(a) This result is based on the following premises. First, this is not

a pre-emption case, for it does not raise the question whether state law is pre-empted by a federal law, see *Wyeth* v. *Levine*, 555 U. S. 555, 563, but instead concerns the alleged preclusion of a cause of action under one federal statute by the provisions of another federal statute. Pre-emption principles may nonetheless be instructive insofar as they are designed to assess the interaction of laws bearing on the same subject. Second, this is a statutory interpretation case; and analysis of the statutory text, aided by established interpretation rules, controls. See *Chickasaw Nation* v. *United States*, 534 U. S. 84, 94. While a principle of interpretation may be countered "by some maxim pointing in a different direction," *Circuit City Stores, Inc.* v. *Adams*, 532 U. S. 105, 115, this Court need not decide what maxim establishes the proper framework here: Even assuming that Coca-Cola is correct that the Court's task is to reconcile or harmonize the statutes instead of to determine whether one statute is an implied repeal in part of another statute, Coca-Cola is incorrect that the best way to do that is to bar POM's Lanham Act claim. Pp. 7–9.

 (b) Neither the Lanham Act nor the FDCA, in express terms, forbids or limits Lanham Act claims challenging labels that are regulated by the FDCA. The absence of such a textual provision when the Lanham Act and the FDCA have coexisted for over 70 years is "powerful evidence that Congress did not intend FDA oversight to be the exclusive means" of ensuring proper food and beverage labeling. See *Wyeth*, *supra,* at 575. In addition, and contrary to Coca-Cola's argument, Congress, by taking care to pre-empt only some state laws, if anything indicated it did not intend the FDCA to preclude requirements arising from other sources. See *Setser* v. *United States*, 566 U. S. ___, ___. The structures of the FDCA and the Lanham Act reinforce this conclusion. Where two statutes are complementary, it would show disregard for the congressional design to hold that Congress intended one federal statute nonetheless to preclude the operation of the other. See *J. E. M. Ag Supply, Inc.* v. *Pioneer Hi-Bred Int'l, Inc.*, 534 U. S. 124, 144. The Lanham Act and the FDCA complement each other in major respects, for each has its own scope and purpose. Both touch on food and beverage labeling, but the Lanham Act protects commercial interests against unfair competition, while the FDCA protects public health and safety. They also complement each other with respect to remedies. The FDCA's enforcement is largely committed to the FDA, while the Lanham Act empowers private parties to sue competitors to protect their interests on a case-by-case basis. Allowing Lanham Act suits takes advantage of synergies among multiple methods of regulation. A holding that the FDCA precludes Lanham Act claims challenging food and beverage labels also could lead to a result that Congress likely did not intend. Be-

cause the FDA does not necessarily pursue enforcement measures re-
garding all objectionable labels, preclusion of Lanham Act claims
could leave commercial interests—and indirectly the public at large—
with less effective protection in the food and beverage labeling realm
than in other less regulated industries. Pp. 9–12.

    (c) Coca-Cola's arguments do not support its claim that preclusion
is proper because Congress intended national uniformity in food and
beverage labeling. First, the FDCA's delegation of enforcement au-
thority to the Federal Government does not indicate that Congress
intended to foreclose private enforcement of other federal statutes.
Second, the FDCA's express pre-emption provision applies by its
terms to state, not federal, law. Even if it were proper to stray from
that text, it not clear that Coca-Cola's national uniformity assertions
reflect the congressional design. Finally, the FDCA and its imple-
menting regulations may address food and beverage labeling with
more specificity than the Lanham Act, but this specificity would mat-
ter only if the two Acts cannot be implemented in full at the same
time. Here, neither the statutory structure nor the empirical evi-
dence of which the Court is aware indicates there will be any difficul-
ty in fully enforcing each statute according to its terms. Pp. 13–15.

    (d) The Government's intermediate position—that a Lanham Act
claim is precluded "to the extent the FDCA or FDA regulations spe-
cifically require or authorize the challenged aspects of [the] label,"
and that this rule precludes POM's challenge to the name of Coca-
Cola's product—is flawed, for the Government assumes that the
FDCA and its regulations are a ceiling on the regulation of food and
beverage labeling when Congress intended the Lanham Act and the
FDCA to complement each other with respect to labeling. Though
the FDA's rulemaking alludes at one point to a balance of interests, it
neither discusses nor cites the Lanham Act; and the Government
points to no other statement suggesting that the FDA considered the
full scope of interests protected by the Lanham Act. Even if agency
regulations with the force of law that purport to bar other legal rem-
edies may do so, it is a bridge too far to accept an agency's after-the-
fact statement to justify that result here. An agency may not reorder
federal statutory rights without congressional authorization. Pp. 15–
17.

679 F. 3d 1170, reversed and remanded.

    KENNEDY, J., delivered the opinion of the Court, in which all other
Members joined, except BREYER, J., who took no part in the considera-
tion or decision of the case.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 12–761

POM WONDERFUL LLC, PETITIONER *v.* THE
COCA-COLA COMPANY

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE NINTH CIRCUIT

[June 12, 2014]

JUSTICE KENNEDY delivered the opinion of the Court.

POM Wonderful LLC makes and sells pomegranate juice products, including a pomegranate-blueberry juice blend. App. 23a. One of POM's competitors is the Coca-Cola Company. Coca-Cola's Minute Maid Division makes a juice blend sold with a label that, in describing the contents, displays the words "pomegranate blueberry" with far more prominence than other words on the label that show the juice to be a blend of five juices. In truth, the Coca-Cola product contains but 0.3% pomegranate juice and 0.2% blueberry juice.

Alleging that the use of that label is deceptive and misleading, POM sued Coca-Cola under §43 of the Lanham Act. 60 Stat. 441, as amended, 15 U. S. C. §1125. That provision allows one competitor to sue another if it alleges unfair competition arising from false or misleading product descriptions. The Court of Appeals for the Ninth Circuit held that, in the realm of labeling for food and beverages, a Lanham Act claim like POM's is precluded by a second federal statute. The second statute is the Federal Food, Drug, and Cosmetic Act (FDCA), which forbids the

misbranding of food, including by means of false or misleading labeling. §§301, 403, 52 Stat. 1042, 1047, as amended, 21 U. S. C. §§331, 343.

The ruling that POM's Lanham Act cause of action is precluded by the FDCA was incorrect. There is no statutory text or established interpretive principle to support the contention that the FDCA precludes Lanham Act suits like the one brought by POM in this case. Nothing in the text, history, or structure of the FDCA or the Lanham Act shows the congressional purpose or design to forbid these suits. Quite to the contrary, the FDCA and the Lanham Act complement each other in the federal regulation of misleading food and beverage labels. Competitors, in their own interest, may bring Lanham Act claims like POM's that challenge food and beverage labels that are regulated by the FDCA.

I

A

This case concerns the intersection and complementarity of these two federal laws. A proper beginning point is a description of the statutes.

Congress enacted the Lanham Act nearly seven decades ago. See 60 Stat. 427 (1946). As the Court explained earlier this Term, it "requires no guesswork" to ascertain Congress' intent regarding this federal law, for Congress included a "detailed statement of the statute's purposes." *Lexmark Int'l, Inc.* v. *Static Control Components, Inc.*, 572 U. S. ___, ___ (2014) (slip op., at 12). Section 45 of the Lanham Act provides:

> "The intent of this chapter is to regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce; to protect registered marks used in such commerce from interference by State, or territorial legislation; to protect persons engaged in such com-

merce against unfair competition; to prevent fraud and deception in such commerce by the use of reproductions, copies, counterfeits, or colorable imitations of registered marks; and to provide rights and remedies stipulated by treaties and conventions respecting trademarks, trade names, and unfair competition entered into between the United States and foreign nations." 15 U. S. C. §1127.

The Lanham Act's trademark provisions are the primary means of achieving these ends. But the Act also creates a federal remedy "that goes beyond trademark protection." *Dastar Corp.* v. *Twentieth Century Fox Film Corp.*, 539 U. S. 23, 29 (2003). The broader remedy is at issue here.

The Lanham Act creates a cause of action for unfair competition through misleading advertising or labeling. Though in the end consumers also benefit from the Act's proper enforcement, the cause of action is for competitors, not consumers.

The term "competitor" is used in this opinion to indicate all those within the class of persons and entities protected by the Lanham Act. Competitors are within the class that may invoke the Lanham Act because they may suffer "an injury to a commercial interest in sales or business reputation proximately caused by [a] defendant's misrepresentations." *Lexmark*, *supra*, at \_\_\_ (slip op., at 22). The petitioner here asserts injury as a competitor.

The cause of action the Act creates imposes civil liability on any person who "uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 15 U. S. C. §1125(a)(1). As the Court held this Term, the private

remedy may be invoked only by those who "allege an injury to a commercial interest in reputation or sales. A consumer who is hoodwinked into purchasing a disappointing product may well have an injury-in-fact cognizable under Article III, but he cannot invoke the protection of the Lanham Act." *Lexmark*, 572 U. S., at ___ (slip op., at 13). This principle reflects the Lanham Act's purpose of "'protect[ing] persons engaged in [commerce within the control of Congress] against unfair competition.'" *Id.*, at ___ (slip op., at 12). POM's cause of action would be straightforward enough but for Coca-Cola's contention that a separate federal statutory regime, the FDCA, allows it to use the label in question and in fact precludes the Lanham Act claim.

So the FDCA is the second statute to be discussed. The FDCA statutory regime is designed primarily to protect the health and safety of the public at large. See *62 Cases of Jam* v. *United States*, 340 U. S. 593, 596 (1951); FDCA, §401, 52 Stat. 1046, 21 U. S. C. §341 (agency may issue certain regulations to "promote honesty and fair dealing in the interest of consumers"). The FDCA prohibits the misbranding of food and drink. 21 U. S. C. §§321(f), 331. A food or drink is deemed misbranded if, *inter alia*, "its labeling is false or misleading," §343(a), information required to appear on its label "is not prominently placed thereon," §343(f), or a label does not bear "the common or usual name of the food, if any there be," §343(i). To implement these provisions, the Food and Drug Administration (FDA) promulgated regulations regarding food and beverage labeling, including the labeling of mixes of different types of juice into one juice blend. See 21 CFR §102.33 (2013). One provision of those regulations is particularly relevant to this case: If a juice blend does not name all the juices it contains and mentions only juices that are not predominant in the blend, then it must either declare the percentage content of the named juice or

"[i]ndicate that the named juice is present as a flavor or flavoring," *e.g.*, "raspberry and cranberry flavored juice drink." §102.33(d). The Government represents that the FDA does not preapprove juice labels under these regulations. See Brief for United States as *Amicus Curiae* in Opposition 16. That contrasts with the FDA's regulation of other types of labels, such as drug labels, see 21 U. S. C. §355(d), and is consistent with the less extensive role the FDA plays in the regulation of food than in the regulation of drugs.

Unlike the Lanham Act, which relies in substantial part for its enforcement on private suits brought by injured competitors, the FDCA and its regulations provide the United States with nearly exclusive enforcement authority, including the authority to seek criminal sanctions in some circumstances. 21 U. S. C. §§333(a), 337. Private parties may not bring enforcement suits. §337. Also unlike the Lanham Act, the FDCA contains a provision pre-empting certain state laws on misbranding. That provision, which Congress added to the FDCA in the Nutrition Labeling and Education Act of 1990, §6, 104 Stat. 2362–2364, forecloses a "State or political subdivision of a State" from establishing requirements that are of the type but "not identical to" the requirements in some of the misbranding provisions of the FDCA. 21 U. S. C. §343–1(a). It does not address, or refer to, other federal statutes or the preclusion thereof.

## B

POM Wonderful LLC is a grower of pomegranates and a distributor of pomegranate juices. Through its POM Wonderful brand, POM produces, markets, and sells a variety of pomegranate products, including a pomegranate-blueberry juice blend. App. 23a.

POM competes in the pomegranate-blueberry juice market with the Coca-Cola Company. Coca-Cola, under

its Minute Maid brand, created a juice blend containing 99.4% apple and grape juices, 0.3% pomegranate juice, 0.2% blueberry juice, and 0.1% raspberry juice. *Id.*, at 38a; Brief for Respondent 8. Despite the minuscule amount of pomegranate and blueberry juices in the blend, the front label of the Coca-Cola product displays the words "pomegranate blueberry" in all capital letters, on two separate lines. App. 38a. Below those words, Coca-Cola placed the phrase "flavored blend of 5 juices" in much smaller type. *Ibid.* And below that phrase, in still smaller type, were the words "from concentrate with added ingredients"—and, with a line break before the final phrase— "and other natural flavors." *Ibid.* The product's front label also displays a vignette of blueberries, grapes, and raspberries in front of a halved pomegranate and a halved apple. *Ibid.*

Claiming that Coca-Cola's label tricks and deceives consumers, all to POM's injury as a competitor, POM brought suit under the Lanham Act. POM alleged that the name, label, marketing, and advertising of Coca-Cola's juice blend mislead consumers into believing the product consists predominantly of pomegranate and blueberry juice when it in fact consists predominantly of less expensive apple and grape juices. *Id.*, at 27a. That confusion, POM complained, causes it to lose sales. *Id.*, at 28a. POM sought damages and injunctive relief. *Id.*, at 32a–33a.

The District Court granted partial summary judgment to Coca-Cola on POM's Lanham Act claim, ruling that the FDCA and its regulations preclude challenges to the name and label of Coca-Cola's juice blend. The District Court reasoned that in the juice blend regulations the "FDA has directly spoken on the issues that form the basis of Pom's Lanham Act claim against the naming and labeling of" Coca-Cola's product, but has not prohibited any, and indeed expressly has permitted some, aspects of Coca-Cola's label. 727 F. Supp. 2d 849, 871–873 (CD Cal. 2010).

The Court of Appeals for the Ninth Circuit affirmed in relevant part. Like the District Court, the Court of Appeals reasoned that Congress decided "to entrust matters of juice beverage labeling to the FDA"; the FDA has promulgated "comprehensive regulation of that labeling"; and the FDA "apparently" has not imposed the requirements on Coca-Cola's label that are sought by POM. 679 F. 3d 1170, 1178 (2012). "[U]nder [Circuit] precedent," the Court of Appeals explained, "for a court to act when the FDA has not—despite regulating extensively in this area— would risk undercutting the FDA's expert judgments and authority." *Id.*, at 1177. For these reasons, and "[o]ut of respect for the statutory and regulatory scheme," the Court of Appeals barred POM's Lanham Act claim. *Id.*, at 1178.

## II

## A

This Court granted certiorari to consider whether a private party may bring a Lanham Act claim challenging a food label that is regulated by the FDCA. 571 U. S. \_\_\_ (2014). The answer to that question is based on the following premises.

First, this is not a pre-emption case. In pre-emption cases, the question is whether state law is pre-empted by a federal statute, or in some instances, a federal agency action. See *Wyeth* v. *Levine*, 555 U. S. 555, 563 (2009). This case, however, concerns the alleged preclusion of a cause of action under one federal statute by the provisions of another federal statute. So the state-federal balance does not frame the inquiry. Because this is a preclusion case, any "presumption against pre-emption," *id.*, at 565, n. 3, has no force. In addition, the preclusion analysis is not governed by the Court's complex categorization of the types of pre-emption. See *Crosby* v. *National Foreign Trade Council*, 530 U. S. 363, 372–373 (2000). Although

the Court's pre-emption precedent does not govern preclusion analysis in this case, its principles are instructive insofar as they are designed to assess the interaction of laws that bear on the same subject.

Second, this is a statutory interpretation case and the Court relies on traditional rules of statutory interpretation. That does not change because the case involves multiple federal statutes. See *FDA* v. *Brown & Williamson Tobacco Corp.*, 529 U. S. 120, 137–139 (2000). Nor does it change because an agency is involved. See *ibid.* Analysis of the statutory text, aided by established principles of interpretation, controls. See *Chickasaw Nation* v. *United States*, 534 U. S. 84, 94 (2001).

A principle of interpretation is "often countered, of course, by some maxim pointing in a different direction." *Circuit City Stores, Inc.* v. *Adams*, 532 U. S. 105, 115 (2001). It is thus unsurprising that in this case a threshold dispute has arisen as to which of two competing maxims establishes the proper framework for decision. POM argues that this case concerns whether one statute, the FDCA as amended, is an "implied repeal" in part of another statute, *i.e.*, the Lanham Act. See, *e.g.*, *Carcieri* v. *Salazar*, 555 U. S. 379, 395 (2009). POM contends that in such cases courts must give full effect to both statutes unless they are in "irreconcilable conflict," see *ibid.*, and that this high standard is not satisfied here. Coca-Cola resists this canon and its high standard. Coca-Cola argues that the case concerns whether a more specific law, the FDCA, clarifies or narrows the scope of a more general law, the Lanham Act. See, *e.g.*, *United States* v. *Fausto*, 484 U. S. 439, 453 (1988); Brief for Respondent 18. The Court's task, it claims, is to "reconcil[e]" the laws, *ibid.*, and it says the best reconciliation is that the more specific provisions of the FDCA bar certain causes of action authorized in a general manner by the Lanham Act.

The Court does not need to resolve this dispute. Even

assuming that Coca-Cola is correct that the Court's task is to reconcile or harmonize the statutes and not, as POM urges, to enforce both statutes in full unless there is a genuinely irreconcilable conflict, Coca-Cola is incorrect that the best way to harmonize the statutes is to bar POM's Lanham Act claim.

B

Beginning with the text of the two statutes, it must be observed that neither the Lanham Act nor the FDCA, in express terms, forbids or limits Lanham Act claims challenging labels that are regulated by the FDCA. By its terms, the Lanham Act subjects to suit any person who "misrepresents the nature, characteristics, qualities, or geographic origin" of goods or services. 15 U. S. C. §1125(a). This comprehensive imposition of liability extends, by its own terms, to misrepresentations on labels, including food and beverage labels. No other provision in the Lanham Act limits that understanding or purports to govern the relevant interaction between the Lanham Act and the FDCA. And the FDCA, by its terms, does not preclude Lanham Act suits. In consequence, food and beverage labels regulated by the FDCA are not, under the terms of either statute, off limits to Lanham Act claims. No textual provision in either statute discloses a purpose to bar unfair competition claims like POM's.

This absence is of special significance because the Lanham Act and the FDCA have coexisted since the passage of the Lanham Act in 1946. 60 Stat. 427 (1946); ch. 675, 52 Stat. 1040 (1938). If Congress had concluded, in light of experience, that Lanham Act suits could interfere with the FDCA, it might well have enacted a provision addressing the issue during these 70 years. See *Wyeth, supra,* at 574 ("If Congress thought state-law suits posed an obstacle to its objectives, it surely would have enacted an express pre-emption provision at some point during the

FDCA's 70-year history"). Congress enacted amendments to the FDCA and the Lanham Act, see, *e.g.*, Nutrition Labeling and Education Act of 1990, 104 Stat. 2353; Trademark Law Revision Act of 1988, §132, 102 Stat. 3946, including an amendment that added to the FDCA an express pre-emption provision with respect to state laws addressing food and beverage misbranding, §6, 104 Stat. 2362. Yet Congress did not enact a provision addressing the preclusion of other federal laws that might bear on food and beverage labeling. This is "powerful evidence that Congress did not intend FDA oversight to be the exclusive means" of ensuring proper food and beverage labeling. See *Wyeth*, 555 U. S., at 575.

Perhaps the closest the statutes come to addressing the preclusion of the Lanham Act claim at issue here is the pre-emption provision added to the FDCA in 1990 as part of the Nutrition Labeling and Education Act. See 21 U. S. C. §343–1. But, far from expressly precluding suits arising under other federal laws, the provision if anything suggests that Lanham Act suits are not precluded.

This pre-emption provision forbids a "State or political subdivision of a State" from imposing requirements that are of the type but "not identical to" corresponding FDCA requirements for food and beverage labeling. *Ibid.* It is significant that the complex pre-emption provision distinguishes among different FDCA requirements. It forbids state-law requirements that are of the type but not identical to only certain FDCA provisions with respect to food and beverage labeling. See §§343–1(a)(1)–(5) (citing some but not all of the subsections of §343); §6, 104 Stat. 2362–2364 (codified at 21 U. S. C. §343–1, and note following). Just as significant, the provision does not refer to requirements imposed by other sources of law, such as federal statutes. For purposes of deciding whether the FDCA displaces a regulatory or liability scheme in another statute, it makes a substantial difference whether that other

statute is state or federal. By taking care to mandate express pre-emption of some state laws, Congress if anything indicated it did not intend the FDCA to preclude requirements arising from other sources. See *Setser* v. *United States*, 566 U. S. \_\_\_, \_\_\_ (2012) (slip op., at 6–7) (applying principle of *expressio unius est exclusio alterius*). Pre-emption of some state requirements does not suggest an intent to preclude federal claims.

The structures of the FDCA and the Lanham Act reinforce the conclusion drawn from the text. When two statutes complement each other, it would show disregard for the congressional design to hold that Congress nonetheless intended one federal statute to preclude the operation of the other. See *J. E. M. Ag Supply, Inc.* v. *Pioneer Hi-Bred Int'l, Inc.*, 534 U. S. 124, 144 (2001) ("[W]e can plainly regard each statute as effective because of its different requirements and protections"); see also *Wyeth*, *supra*, at 578–579. The Lanham Act and the FDCA complement each other in major respects, for each has its own scope and purpose. Although both statutes touch on food and beverage labeling, the Lanham Act protects commercial interests against unfair competition, while the FDCA protects public health and safety. Compare *Lexmark*, 572 U. S., at \_\_\_ (slip op., at 12–13), with *62 Cases of Jam*, 340 U. S., at 596. The two statutes impose "different requirements and protections." *J. E. M. Ag Supply*, *supra*, at 144.

The two statutes complement each other with respect to remedies in a more fundamental respect. Enforcement of the FDCA and the detailed prescriptions of its implementing regulations is largely committed to the FDA. The FDA, however, does not have the same perspective or expertise in assessing market dynamics that day-to-day competitors possess. Competitors who manufacture or distribute products have detailed knowledge regarding how consumers rely upon certain sales and marketing strategies. Their awareness of unfair competition prac-

tices may be far more immediate and accurate than that of agency rulemakers and regulators. Lanham Act suits draw upon this market expertise by empowering private parties to sue competitors to protect their interests on a case-by-case basis. By "serv[ing] a distinct compensatory function that may motivate injured persons to come forward," Lanham Act suits, to the extent they touch on the same subject matter as the FDCA, "provide incentives" for manufacturers to behave well. See *id.*, at 579. Allowing Lanham Act suits takes advantage of synergies among multiple methods of regulation. This is quite consistent with the congressional design to enact two different statutes, each with its own mechanisms to enhance the protection of competitors and consumers.

A holding that the FDCA precludes Lanham Act claims challenging food and beverage labels would not only ignore the distinct functional aspects of the FDCA and the Lanham Act but also would lead to a result that Congress likely did not intend. Unlike other types of labels regulated by the FDA, such as drug labels, see 21 U. S. C. §355(d), it would appear the FDA does not preapprove food and beverage labels under its regulations and instead relies on enforcement actions, warning letters, and other measures. See Brief for United States as *Amicus Curiae* in Opposition 16. Because the FDA acknowledges that it does not necessarily pursue enforcement measures regarding all objectionable labels, *ibid.*, if Lanham Act claims were to be precluded then commercial interests—and indirectly the public at large—could be left with less effective protection in the food and beverage labeling realm than in many other, less regulated industries. It is unlikely that Congress intended the FDCA's protection of health and safety to result in less policing of misleading food and beverage labels than in competitive markets for other products.

## C

Coca-Cola argues the FDCA precludes POM's Lanham Act claim because Congress intended national uniformity in food and beverage labeling. Coca-Cola notes three aspects of the FDCA to support that position: delegation of enforcement authority to the Federal Government rather than private parties; express pre-emption with respect to state laws; and the specificity of the FDCA and its implementing regulations. But these details of the FDCA do not establish an intent or design to preclude Lanham Act claims.

Coca-Cola says that the FDCA's delegation of enforcement authority to the Federal Government shows Congress' intent to achieve national uniformity in labeling. But POM seeks to enforce the Lanham Act, not the FDCA or its regulations. The centralization of FDCA enforcement authority in the Federal Government does not indicate that Congress intended to foreclose private enforcement of other federal statutes.

Coca-Cola next appeals to the pre-emption provision added to the FDCA in 1990. See §343–1. It argues that allowing Lanham Act claims to proceed would undermine the pre-emption provision's goal of ensuring that food and beverage manufacturers can market nationally without the burden of complying with a patchwork of requirements. A significant flaw in this argument is that the pre-emption provision by its plain terms applies only to certain state-law requirements, not to federal law. See Part II–B, *supra*. Coca-Cola in effect asks the Court to ignore the words "State or political subdivision of a State" in the statute.

Even if it were proper to stray from the text in this way, it is far from clear that Coca-Cola's assertions about national uniformity in fact reflect the congressional design. Although the application of a federal statute such as the Lanham Act by judges and juries in courts throughout the

country may give rise to some variation in outcome, this is the means Congress chose to enforce a national policy to ensure fair competition. It is quite different from the disuniformity that would arise from the multitude of state laws, state regulations, state administrative agency rulings, and state-court decisions that are partially forbidden by the FDCA's pre-emption provision. Congress not infrequently permits a certain amount of variability by authorizing a federal cause of action even in areas of law where national uniformity is important. Compare *Bonito Boats, Inc.* v. *Thunder Craft Boats, Inc.*, 489 U. S. 141, 162 (1989) ("One of the fundamental purposes behind the Patent and Copyright Clauses of the Constitution was to promote national uniformity in the realm of intellectual property"), with 35 U. S. C. §281 (private right of action for patent infringement); see *Wyeth*, 555 U. S., at 570 ("[T]he [FDCA] contemplates that federal juries will resolve most misbranding claims"). The Lanham Act itself is an example of this design: Despite Coca-Cola's protestations, the Act is uniform in extending its protection against unfair competition to the whole class it describes. It is variable only to the extent that those rights are enforced on a case-by-case basis. The variability about which Coca-Cola complains is no different than the variability that any industry covered by the Lanham Act faces. And, as noted, Lanham Act actions are a means to implement a uniform policy to prohibit unfair competition in all covered markets.

Finally, Coca-Cola urges that the FDCA, and particularly its implementing regulations, addresses food and beverage labeling with much more specificity than is found in the provisions of the Lanham Act. That is true. The pages of FDA rulemakings devoted only to juice-blend labeling attest to the level of detail with which the FDA has examined the subject. *E.g.*, Food Labeling; Declaration of Ingredients; Common or Usual Name for Nonstandardized Foods; Diluted Juice Beverages, 58 Fed. Reg.

2897–2926 (1993). Because, as we have explained, the FDCA and the Lanham Act are complementary and have separate scopes and purposes, this greater specificity would matter only if the Lanham Act and the FDCA cannot be implemented in full at the same time. See *RadLAX Gateway Hotel, LLC* v. *Amalgamated Bank*, 566 U. S. \_\_\_, \_\_\_ (2012) (slip op., at 5–7). But neither the statutory structure nor the empirical evidence of which the Court is aware indicates there will be any difficulty in fully enforcing each statute according to its terms. See Part II–B, *supra*.

D

The Government disagrees with both Coca-Cola and POM. It submits that a Lanham Act claim is precluded "to the extent the FDCA or FDA regulations specifically require or authorize the challenged aspects of [the] label." Brief for United States as *Amicus Curiae* 11. Applying that standard, the Government argues that POM may not bring a Lanham Act challenge to the name of Coca-Cola's product, but that other aspects of the label may be challenged. That is because, the Government argues, the FDA regulations specifically authorize the names of juice blends but not the other aspects of the label that are at issue.

In addition to raising practical concerns about drawing a distinction between regulations that "specifically . . . authorize" a course of conduct and those that merely tolerate that course, *id.*, at 10–11, the flaw in the Government's intermediate position is the same as that in Coca-Cola's theory of the case. The Government assumes that the FDCA and its regulations are at least in some circumstances a ceiling on the regulation of food and beverage labeling. But, as discussed above, Congress intended the Lanham Act and the FDCA to complement each other with respect to food and beverage labeling.

The Government claims that the "FDA's juice-naming regulation reflects the agency's 'weigh[ing of] the competing interests relevant to the particular requirement in question.'" *Id.*, at 19 (quoting *Medtronic, Inc.* v. *Lohr*, 518 U. S. 470, 501 (1996)). The rulemaking indeed does allude, at one point, to a balancing of interests: It styles a particular requirement as "provid[ing] manufacturers with flexibility for labeling products while providing consumers with information that they need." 58 Fed. Reg. 2919–2920. But that rulemaking does not discuss or even cite the Lanham Act, and the Government cites no other statement in the rulemaking suggesting that the FDA considered the full scope of the interests the Lanham Act protects. In addition, and contrary to the language quoted above, the FDA explicitly encouraged manufacturers to include material on their labels that is not required by the regulations. *Id.*, at 2919. A single isolated reference to a desire for flexibility is not sufficient to transform a rulemaking that is otherwise at best inconclusive as to its interaction with other federal laws into one with preclusive force, even on the assumption that a federal regulation in some instances might preclude application of a federal statute. Cf. *Williamson* v. *Mazda Motor of America, Inc.*, 562 U. S. ___, ___ (2011) (slip op., at 10–11).

In addition, *Geier* v. *American Honda Motor Co.*, 529 U. S. 861 (2000), does not support the Government's argument. In *Geier*, the agency enacted a regulation deliberately allowing manufacturers to choose between different options because the agency wanted to encourage diversity in the industry. A subsequent lawsuit challenged one of those choices. The Court concluded that the action was barred because it directly conflicted with the agency's policy choice to encourage flexibility to foster innovation. *Id.*, at 875. Here, by contrast, the FDA has not made a policy judgment that is inconsistent with POM's Lanham Act suit. This is not a case where a law-

suit is undermining an agency judgment, and in any event the FDA does not have authority to enforce the Lanham Act.

It is necessary to recognize the implications of the United States' argument for preclusion. The Government asks the Court to preclude private parties from availing themselves of a well-established federal remedy because an agency enacted regulations that touch on similar subject matter but do not purport to displace that remedy or even implement the statute that is its source. Even if agency regulations with the force of law that purport to bar other legal remedies may do so, see *id.*, at 874; see also *Wyeth*, 555 U. S., at 576, it is a bridge too far to accept an agency's after-the-fact statement to justify that result here. An agency may not reorder federal statutory rights without congressional authorization.

\* \* \*

Coca-Cola and the United States ask the Court to elevate the FDCA and the FDA's regulations over the private cause of action authorized by the Lanham Act. But the FDCA and the Lanham Act complement each other in the federal regulation of misleading labels. Congress did not intend the FDCA to preclude Lanham Act suits like POM's. The position Coca-Cola takes in this Court that because food and beverage labeling is involved it has no Lanham Act liability here for practices that allegedly mislead and trick consumers, all to the injury of competitors, finds no support in precedent or the statutes. The judgment of the Court of Appeals for the Ninth Circuit is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE BREYER took no part in the consideration or decision of this case.