**SO ORDERED,** this 18th day of January, 2017.

**HI–TECH PHARMACEUTICALS, INC., et al., Plaintiffs,**

v.

**HODGES CONSULTING, INC., et al., Defendants.**

CIVIL-ACTION NO. 1:16–cv–00906–AT

United States District Court, N.D. Georgia, Atlanta Division.

Signed 12/13/2016

---

Arthur W. Leach, Law Office of Arthur W. Leach, Cynthia Lynn Parker, CL Parker, LLC, Alpharetta, GA, Gregory L. Hillyer, Brinks Gilson & Lione, Washington, DC, for Plaintiffs.

Charles E. Peeler, Flynn Peeler & Phillips, LLC, Albany, GA, for Defendants.

John Does I–V, pro se.

## ORDER

Amy Totenberg, United States District Judge

Competitors often go to great lengths to get an edge over their opponents.[1] Some athletes and bodybuilders are even willing to do alter their body chemistry to win a competition.[2] A large and profitable industry has arisen to supply athletes and bodybuilders with dietary supplements that purport to give a chemically induced competitive advantage.[3] High Tech Pharma-

---

1. Perhaps the most relevant example to support this proposition is the Russian government's concerted effort to provide its international athletes with steroids and other performance enhancing drugs, and shield them from the negative consequences. The program allegedly "[involved] ... all organs of the state ..., including the Russian sports ministry, the Russian security service the FSB, and the Centre of Sports Preparation of National Teams of Russia (CSP)." Sean Ingle, *Russia orchestrated state-sponsored doping cover-up, says Wada report*, The Guardian (July 18, 2016), https://www.theguardian.com/sport/2016/jul/18/wada-report-russia-sochi-winter-olympics.

2. *Id.*

3. David Lariviere, *Nutritional Supplements Flexing Muscles As Growth Industry*, Forbes (Apr. 18, 2013), http://www.forbes.com/sites/davidlariviere/2013/04/18/nutritional-supplements-flexing-their-muscles-as-growth-industry/#20407ddb4255.

ceuticals, Inc. ("Hi–Tech") and Hodges Consulting, Inc. ("Hodges") are both players in this industry, (Doc. 1, Compl. ¶¶ 1, 6), and are in a competition of their own. Hi–Tech sells "several categories of body building products, including testosterone boosters, muscle-gainers, and pro-anabolics." (Compl. ¶ 1.) It accuses Hodges of infringing on a patent (Patent No. 8,084,-446, or "the 446 Patent") for a compound called dehydroepindrosterone ("DHEA") (Doc. 1–1 at 2.), and seeks an injunction and damages. (Compl. ¶¶ 20–44, 72–91.) DHEA is an adrenal steroid that may help facilitate "skeletal muscle growth, red blood cell production (erythropoiesis), regulation of glucose and insulin levels and cellular aging." (Doc. 1–1 at 3.) [4]

In addition to its patent infringement claims in Count I, Hi–Tech accuses Hodges, doing business as Double Dragon Labs and Double Dragon Pharmaceuticals, of attempting to gain a competitive edge by putting so-called "designer steroids" in its products. (Compl. ¶¶ 51–55.) Designer steroid products are "analog[s] of an anabolic steroid, created by slightly altering the molecule of an anabolic steroid." (Compl. ¶ 46.) Section 2 of the Anabolic Steroid Control Act of 2004 added substances deemed designer steroid products to the definition of "anabolic steroids" in the Controlled Substances Act. Anabolic Steroid Control Act of 2004, § 2, 21 U.S.C. § 802(41)(A). (Compl. ¶¶ 47–48.) Among these substances was 4–chloro–17α–methyl–androsta–1,4–diene–3, 17β–diol.[5] (Compl. ¶ 50; 21 U.S.C. § 802(41)(A)(liii) (listing "4–chloro–17α–methyl–androsta–1,4–diene–3, 17β–diol" under the definition of anabolic steroids)). Hi–Tech alleges that two Hodges products, SOS–500 and HD–50 (collectively "SOS–500"), contained 4–chloro–17α–methyl–androsta–1,4–diene–3, 17β–diol ("Halovar").[6] (Compl. ¶¶ 52, 53.) If Plaintiff's allegations about Defendant's inclusions of Halovar in its SOS–500 products are true, then those products likely contain a Schedule III controlled substance.

Hi–Tech predicates a number of claims on the alleged inclusion of Halovar in SOS–500. In Count II of its Complaint, Hi–Tech argues that Hodges is liable for damages under § 43(A)(1)(B) of the Lanham Act due to its deceptive marketing practices, false statements, and misbranding. (Compl. ¶¶ 92–99.) Furthermore, Hi–Tech alleges that Hodges violated the Food, Drugs, and Cosmetics Act (FDCA) by failing to list Halovar as an active ingredient on its label. (Compl. ¶¶ 93–94.) According to Hi–Tech, this violation of the FDCA resulted in "the tendency to deceive a substantial segment of the public into believing that they are purchasing a prod-

---

**4.** Hodges does not seek dismissal of Hi–Tech's patent infringement claims, essentially agreeing that "[t]his is a patent infringement case." (Doc. 11 at 1.)

**5.** Hi–Tech also alleged that 13–ethyl–3–methoxy–gona–2,5 (10)–dien–17–one was included by the Anabolic Steroid Control Act of 2004, and that Hodges used that substance in its "SOS–500" product. (Compl. ¶¶ 50, 52.) It does not appear from the Court's research that Congress added 13–ethyl–3–methoxy–gona–2,5 (10)–dien–17–one as a banned substance in the Controlled Substance Act of 2004 as passed. Pub. L. No. 108–358, 118 Stat. 1663 (2004). Nor is this substance listed under the current version of 21 U.S.C.

§ 802(41)(A). The substance is known as Methoxydienone. U.S. NAT'L LIBRARY OF MED., *Toxicology Data Network: Substance Name Methoxydienone* (last visited Dec. 12, 2016), https://chem.nlm.nih.gov/chemidplus/rn/2322–77–2. Because Hi–Tech alleged that Hodges' products contain Halovar, a substance expressly listed in the Anabolic Steroid Control Act of 2004, this discrepancy is worth noting, but not determinative of any of the issues the Court must rule on in this motion.

**6.** DEPARTMENT OF JUSTICE, UNITED STATES ATTORNEY'S OFFICE, WESTERN DISTRICT OF VIRGINIA, *Danville Man Sentenced for Manufacturing and Distributing Illegal Dietary Supplements*, 2016 WL 2866039, May 17, 2016.

uct with different characteristics." (Compl. ¶ 94.) Hi–Tech also claims that the omission of any reference to Halovar or its potential side effects and instructions for safe use was "likely to influence a consumer's purchasing decision, especially if the consumer has concerns about the consequences of ingesting an untested product or one considered an unapproved new drug by [the] FDA without proper medical oversight." (Compl. ¶ 95.)

In Counts III and IV, Hi–Tech claims that these same practices, statements, and misbranding subject Hodges to liability under the Georgia Deceptive Trade Practices Act, O.C.G.A. § 10–1–372(a) (Compl. ¶¶ 100–07), and at common law for unfair competition. (Compl. ¶¶ 108–15.) Finally, in Counts V through VII, Hi–Tech sets forth Georgia RICO claims against Hodges. (Compl. ¶¶ 116–43.)

Hodges seeks dismissal of Counts II through VIII by characterizing them as an "attempt to shoehorn alleged FDCA violations" into "Lanham Act, Georgia Deceptive Trade Practices Act, unfair competition and RICO claims," and arguing that the FDCA precludes those claims. (Doc. 11 at 2.) Additionally, Hodges seeks dismissal of Hi–Tech's Georgia RICO claims, arguing that they are inappropriately predicated on patent infringement claims and FDCA violations, and Hi–Tech lacks RICO standing. (Doc. 11 at 11–15.) Hodges does not seek to dismiss Hi–Tech's patent claims.

Hi–Tech's Motion to Dismiss Hodges' counterclaims seeking a declaratory judgment of non-infringement and invalidity of the '446 Patent also is before the Court [Doc. 16]. Hi–Tech argues that patent claims are "subject to the general pleading requirements of *Twombly* and *Iqbal*" and under that standard, Hodges has failed to plead any facts to support its claim. (Doc. 16 at 5–6, 8–10.)

For the reasons set forth below, the Court **GRANTS IN PART AND DENIES IN PART** Hodges' Motion to Dismiss as to Count II, **GRANTS IN PART AND DENIES IN PART** Hodges' Motion to Dismiss as to Counts III and IV, **GRANTS** Hodges' Motion to Dismiss Counts V through VII **WITHOUT PREJUDICE**, and **GRANTS** Hi–Tech's Motion to Dismiss as to both of Hodges' counterclaims **WITHOUT PREJUDICE**.

## I. LEGAL STANDARD

A complaint is subject to dismissal under Rule 12(b)(6) where it appears that the facts alleged fail to state a "plausible" claim for relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555–56, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); Fed. R. Civ. P. 12(b)(6). A claim is plausible when the plaintiff alleges factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

The plausibility standard requires that a plaintiff allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" that supports the plaintiff's claim. *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955. A plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. To survive dismissal, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 555, 570, 127 S.Ct. 1955; *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937.

"Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense." *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." *Id.* (citing Fed. Rule Civ. Proc. 8(a)(2)).

"The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678–79, 129 S.Ct. 1937. In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.' " *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678–79, 129 S.Ct. 1937). Further, "courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Id.* (quoting 556 U.S. at 678–79, 129 S.Ct. 1937).

Civil RICO claims based on fraud are subject to Rule 9(b)'s heightened pleading standard and must be pled with particularity. *Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007). A substantive RICO allegation must comply not only with the plausibility criteria of *Twombly* and *Iqbal* but must also state with particularity the circumstances constituting the fraud or mistake. *Id.*; Fed. R. Civ. P. 9(b). "A plaintiff must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." *Am. Dental*

*Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010). In a case involving multiple defendants, the complaint may not lump together all of the defendants, as "the complaint should inform each defendant of the nature of his alleged participation in the fraud." *Brooks v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1381 (11th Cir. 1997); *Am. Dental Ass'n*, 605 F.3d at 1291 ("The plaintiff must allege facts with respect to each defendant's participation in the fraud.").

## II. DISCUSSION

### A. HI-TECH'S LANHAM ACT CLAIMS

Hi–Tech accuses Hodges of including the designer steroid Halvoar in Hodges' SOS–500 dietary supplement product to gain a competitive advantage. Hi–Tech partially bases its Lanham Act claim on the argument that SOS–500 should be considered a "new drug" under the FDCA, not a dietary supplement. (Compl. ¶ 56.) Under this argument, Hi–Tech claims that Hodges should have submitted a new drug application ("NDA") to the FDA before placing it on the market. (Compl. ¶¶ 56–60.) Hi–Tech also characterizes SOS–500 as a prescription drug, and claims that Hodges violated the FDCA by not labeling it as such and failing to provide instructions for safe use. (Compl. ¶¶ 61–71.) Hi–Tech finally argues that whether SOS–500 was a new drug, a prescription drug, or just a dietary supplement that contained a Schedule III controlled substance, the supplement ran afoul of the FDCA's labeling requirements.

Hodges argues that Hi–Tech is really just asserting rights under the FDCA that it cannot bring on its own behalf, because "all such proceedings for the enforcement, or to restrain violations [of the FDCA] shall be by and in the name of the United States." 21 U.S.C. § 337(a); Doc. 11 at 6.

 The FDCA generally does not preclude Lanham Act claims based on false labeling. *POM Wonderful LLC v. Coca-Cola Co.*, — U.S. —, 134 S.Ct. 2228, 2238–39, 189 L.Ed.2d 141 (2014); *ThermoLife Int'l, LLC. v. Gaspari Nutrition, Inc.*, 648 Fed.Appx. 609, 612 (9th Cir. 2016) ("*POM Wonderful* established that the FDCA generally does not preclude Lanham Act claims for false labeling of food."). The FDCA and Lanham Act serve different purposes in a larger legislative scheme. The FDCA protects public health and safety, and grants the FDA exclusive authority to pursue violations. *POM Wonderful*, 134 S.Ct. at 2235–36. By contrast, the Lanham Act empowers competitors steeped in knowledge of their own market to sue when they suffer harm from deceptive advertising practices. This approach reflects Congress' judgment that competitors are better positioned than the average consumer or the FDA to understand the pernicious effects of deceptive advertising and trade practices. *Id.* at 2238–39.

 However, there are some circumstances when the FDCA does preclude Lanham Act claims. Those circumstances arise when a Lanham Act claim would require a court to make determinations about the safety, legality, and classification of new drugs that are more properly within the exclusive purview of the FDA. *Id.* at 2238 ("Enforcement of the FDCA and the detailed prescriptions of its implementing regulations is largely committed to the FDA."). Therefore, "courts have refused to allow a Lanham Act claim to proceed where, in order to determine the falsity or misleading nature of the representation at issue, the court would be required to interpret and apply FDCA statutory regulatory provisions." *Mutual Pharm. Co. v. Ivax Pharm., Inc.*, 459 F.Supp.2d 925, 934 (C.D. Cal. 2006). Courts have historically used this rule out of deference to the FDA, such as "when the FDA has failed to take a position on the particular issue that is the subject of the alleged false representation comprising the Lanham Act claim." *Id.*; see also *Sandoz Pharm. Corp. v. Richardson–Vicks, Inc.*, 902 F.2d 222, 230–31 (3d Cir. 1990) (FDCA precluded Lanham Act false advertising claims related to false advertising by labeling an ingredient "inactive" when the FDA had not yet determined whether the ingredient was active or inactive); *Graceway Pharm., LLC v. River's Edge Pharm., LLC*, 2:08–cv–0067–RWS, 2009 WL 3753586, at *8–9 (N.D. Ga. Nov. 6, 2009) (Story, J.) (finding FDCA precluded Lanham Act claims when the court would have to make findings in the absence of clearly defined standards from the FDA).

*JHP Pharm., LLC v. Hospira, Inc.*, 52 F.Supp.3d 992, 999 (C.D. Cal. 2014) is illustrative. In *JHP*, the plaintiff manufactured an injectable epinephrine that the FDA approved for marketing as a drug. *Id.* at 996. It sued three competitors whose NDAs were pending adjudication by the FDA, claiming that the defendants misbranded their products by claiming that they were FDA-approved and safe for use. *Id.* The court found that *POM Wonderful* established a "general presumption ... that Lanham Act claims with regard to FDCA-regulated products are permissible and, indeed, desirable." *Id.* at 1000. While allowing many of the plaintiff's Lanham Act claims to proceed, the *JHP* court did find that the FDCA precluded the plaintiff's claim that the defendants deceptively advertised their products as safe and fully compliant with all relevant FDA regulations. *JHP Pharm., LLC*, 52 F.Supp.3d at 1004 ("the question of legality directly implicates the FDA's rulemaking authority. The determination of whether a drug is "new," and whether it can be lawfully marketed under the FDCA, involves complex issues of history, public safety, and administrative priorities that Congress has delegated exclusively to the FDA.") The

FDCA preempted this claim, because the FDA was still adjudicating the defendants' NDAs, and had yet to make a clear determination about the safety and legality of the defendants' products. *Id.*

*Nutrition Distribution LLC v. Custom Nutraceuticals LLC*, 194 F.Supp.3d 952, 956–57 (D. Az. 2016) provides another example of a court navigating the tightrope between permitted and precluded Lanham Act claims. *Nutrition Distribution* involved Lanham Act claims by rival dietary supplement manufacturers, much like the case at bar. *Id.* at 954–55.[7] The supplement at issue was labeled as "not for human consumption" while at the same time the defendant touted the benefits of ingesting it. In addition, the defendant marketed the product to competitive athletes, while omitting the fact that the substance had been "banned by the World Anti-Doping Agency and the U.S. Anti-Doping Agency." Finally, the complaint alleged that the defendant had made false and misleading statements about its product's side effects. The court denied a motion to dismiss because the complaint presented no issues that would invade the province of the FDA. *Id.* at 955–57. Under these circumstances, the trial court held that it did not need to interpret or apply the FDCA to determine whether or not the marketing of the supplement was deceptive. *Id.* As the court put it, "while the FDA is charged with determining whether products like [the supplement at issue] are safe enough to be sold in interstate commerce … this case presents a different question: whether [the supplement] is as safe as *Defendants claimed.*" *Id.* at 956–57 (citations omitted).

■ Here, Hi–Tech advances theories that do appear to step on the FDCA's toes, while at the same time advancing more conventional false advertising-like claims that do not. For example, Hi–Tech alleges that Hodges never sought approval from the FDA for SOS–500. (Compl. ¶ 59.) It also concludes that SOS–500 is a "new drug" (Compl. ¶ 56), and a "prescription drug." (Compl. ¶ 64.) Hi–Tech's Lanham Act claims cannot proceed to the extent that they rely on these conclusions. Hodges has not given the FDA an opportunity to determine whether SOS–500 is a new drug or a prescription drug, and it is inappropriate for the Court to make those determinations in place of the FDA. *POM Wonderful*, 134 S.Ct. at 2238. As in *Nutrition Distribution*, the Court declines to determine whether the supplement at issue is a drug or whether its sale violated the FDCA, because a factfinder can determine whether Defendant's statements about its product were misleading under the Lanham Act without reaching those issues. *Nutrition Distribution*, 194 F.Supp.3d at 956–57. As the court in *JHP* observed, the "determination of whether a drug is 'new,' and whether it can be lawfully marketed under the FDCA, involves complex issues of history, public safety, and administrative priorities that Congress has delegated exclusively to the FDA." 52 F.Supp.3d at 1004. To the extent that the Court would be required to make such determinations, Counts II, III, and IV are precluded. The Complaint may, however, proceed on narrower grounds.

■ Plaintiff alleges that Defendants market their SOS–500 products as "natu-

---

7. This case viewed the issue through the lens of "primary jurisdiction," not preclusion. As some commentators have noted, these doctrines are at least very similar if not entirely overlapping. Peter Brody, Paul Rubin, & Joshua Oyster, *Preclusion, Primary Jurisdiction, and Private Enforcement: The Intersec-* *tion of the Lanham Act and the Federal Food, Drug, and Cosmetic Act*, bna.com (May 7, 2014) available at https://www.bna.com/preclusion-primary-jurisdiction–n 17179890265/ (last accessed December 4, 2016). Thus, the Court finds *Nutrition Distribution* to be relevant and persuasive.

ral dietary supplements when, in fact they contain ... Schedule III designer steroids." (Compl. ¶ 56.) Labeling a product a "dietary supplement" or "natural dietary supplement" without providing any warning that it contains a Schedule III substance or designer steroid might fall within the realm of false and misleading advertising and labeling. Indeed, professional athletes have claimed that they accidentally ingested steroids after testing positive for them and receiving suspensions.[8] To prevail with this claim, Hi–Tech would need to prove that SOS–500 actually contained Halovar, and its label did not include any warning that it contained the substance, or the label deceptively labeled SOS–500 as a "natural" supplement.[9] The Court would not need to go down paths not yet travelled by Congress and the FDA in determining whether or not SOS–500 should have gone through the new drug approval process (or some other regulatory process). It would not need to determine whether SOS–500 is a drug or a dietary supplement, because regardless of what it is, Hodges cannot falsely or deceptively market it. Accordingly, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion to Dismiss the

Lanham Act claims. The Court will permit Plaintiff to proceed on its Lanham Act claims under (1) a theory that the SOS–500 products contained Halovar but that fact was not disclosed to consumers, and (2) a theory that the SOS–500 products were marketed as "natural" dietary supplements when in fact they contained Halovar. Plaintiff will still of course have to prove that these kinds of representations were misleading within the meaning of the Lanham Act.

Hodges also argues for dismissal of Hi–Tech's Georgia Uniform Deceptive Trade Practices Act and unfair competition claims for the same reasons it seeks to dismiss Hi–Tech's Lanham Act claims.[10] Hi–Tech's UDTPA and unfair competition claims are virtually the same as its Lanham Act claims, and so this argument fails for the same reasons Hodges' attempt to entirely dismiss the Lanham Act claims failed. *Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1247 (11th Cir. 2007) (noting that the Lanham Act and Georgia Uniform Deceptive Trade Practices Act are analogous, and affirming a district court's granting of summary judgment as to both claims on the same grounds); *Graceway*

---

**8.** For example, after testing positive for two banned substances in April, 2016, Miami Marlins Second Baseman Dee Gordon stated "Though I did not do so knowingly, I have been informed that the test results showed I ingested something that contained prohibited substances." Joe Frisaro, *2B Gordon gets 80-game penalty*, MLB.com (Apr. 29, 2016), http://m.mlb.com/news/article/175200718/ mlb-suspends-marlins-dee-gordon–80–games/. He was not the first athlete to use a similar argument. Notably, Rafael Palmeiro publicly claimed that he accidentally ingested steroids, only to have that argument flatly rejected by an arbitration panel and the general public. Flinder Boyd, *The Rise and Fall of Rafael Palmeiro*, Fox Sports (Apr. 18, 2016), http://www.foxsports.com/mlb/story/rafael-palmeiro-steroids-over-a-decade-later-the-baltimore-orioles-legend-moves-on–041816.

**9.** If SOS–500 did contain Halovar and did not disclose of that fact on its label, Hodges may also have violated 21 U.S.C. § 825(e)(1), which states: "It shall be unlawful to import, export, manufacture, distribute, [or] dispense ... an anabolic steroid or product containing an anabolic steroid, *unless the steroid or product bears a label clearly identifying an anabolic steroid or product containing an anabolic steroid* by the nomenclature used by the International Union of Pure and Applied Chemistry (IUPAC)." (emphasis added)

**10.** The Court notes that Hodges focused its motion to dismiss on preclusion, and has not challenged the sufficiency of the factual allegations themselves.

*Pharm. LLC*, 2009 WL 3753586, at *11 ("Plaintiffs also allege as counts three and four of their complaint claims of common law unfair competition and misappropriation. The analysis of a Georgia unfair competition claim is co-extensive with the Lanham Act analysis. Therefore, since Defendant is entitled to summary judgment on the Lanham Act claims, it is also entitled to summary judgment as to the common law unfair competition claim.") (citations omitted). Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** Hodges' motion to dismiss as to Counts III and IV as provided herein. Hi-Tech may pursue its UDTPA and unfair competition claims on the same grounds as its Lanham Act claims.

### B. HI-TECH'S GEORGIA RICO CLAIMS

The Court next turns to Hi-Tech's Georgia RICO claims. The complaint alleges, in very general terms, a conspiracy between Hodges and John Does I through V. According to the complaint, "John Does I–V are individuals who authorize, participate in, direct, control, cause, ratify, and/or are the moving force behind the selection and sale and distribution of the products and/or personally sell the products described herein." (Compl. ¶ 7.) They "are employed by and associated with Hodges Consulting, Inc." (Compl. ¶ 120.) Together, Defendants intentionally created a scheme "to [ ] defraud [Hi-Tech] out of sales and profits through their patent-infringing and Designer Steroid Products" (Compl. ¶ 122), and "through their false and/or misleading claims regarding the content, quality, characteristics, and/or ingredients of their designer steroid products." (Compl. ¶ 123.) Hodges and its unnamed co-defendants engaged in mail fraud (Compl. ¶¶ 125–28) and wire fraud (Compl. ¶¶ 129–133) in the

furtherance of their conspiracy against Hi-Tech. Beyond these allegations, the factual predicate for these claims are remarkably thin.

■ Hi-Tech asserts claims under all three subsections of Georgia's RICO statute, O.C.G.A. § 16–14–4. Under subsection (a), "[i]t shall be unlawful for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money." A "pattern of racketeering activity" means:

> Engaging in at least two acts of racketeering activity in furtherance of one or more incidents, schemes, or transactions that have the same or similar intents, results, accomplices, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics and are not isolated incidents....

O.C.G.A. § 16–14–3(4)(A). Subsection (b) forbids participation in such an enterprise, and subsection (c) criminalizes conspiracy to violate subsections (a) and (b). O.C.G.A. § 16–14–4. "[T]o state a claim under [O.C.G.A. § 16–14–4], a claimant must allege at least two predicate acts of conduct that are crimes chargeable by indictment under certain laws of the state of Georgia or the United States." *Dalton v. State Farm Fire and Cas. Co.*, 1:12–CV–02848–RWS, 2013 WL 1213270, at *3 (N.D. Ga. Mar. 22, 2013) (Story, J.). While in certain respects, the Georgia RICO statute is broader than the Federal RICO statute, Georgia's RICO statutes are "essentially identical to the Federal RICO statutes...." *Morast v. Lance*, 807 F.2d 926, 933 (11th Cir. 1987); *Chancey v. State*, 256 Ga. 415,349 S.E.2d 717, 722 (1986).[11]

11. Where the two laws are coextensive, the Court may use federal decisions for guidance. At this stage, the minor differences between a federal RICO and Georgia RICO claim are immaterial, because Hi-Tech has not alleged enough facts to support either claim.

 Hodges argues for dismissal of Hi–Tech's Georgia RICO claims (Counts V, VI, and VII) on two grounds. First, it contends that patent infringement claims and alleged FDCA violations are not predicates for civil RICO actions. (Doc. 11 at 11–14.) It relies on *Johnson Electric North America, Inc. v. Mabuchi Motor America Corp.*, arguing that it stands for the proposition that patent violations cannot be the predicate for RICO claims. (Doc. 11 at 12.) In *Johnson Electric*, the court came to the more nuanced conclusion that patent infringements, standing alone, cannot be the sole basis underpinning allegations of mail fraud and wire fraud. 98 F.Supp.2d 480, 491 (S.D.N.Y. 2000) ("Mabuchi's RICO claims must be dismissed because patent infringement *alone* cannot be the basis for mail and wire fraud") (emphasis added). Hodges does correctly assert that FDCA violations cannot serve as predicates for RICO actions. *In re Epogen & Aranesp Off–Label Marketing & Sales Practices Litig.*, 590 F.Supp.2d 1282, 1290 (C.D. Cal. 2008) (finding that plaintiffs were attempting to "shoehorn ... violation[s] of the FDCA into RICO" but dismissing with leave to amend their complaint to properly plead mail and wire fraud).

Hi–Tech responds that patent infringement and FDCA violations are not the predicate acts that support its RICO claims. (Doc. 15 at 12.) Its Brief in Opposition to Hodges' Motion to Dismiss clarifies that it is predicating its RICO claims on mail and wire fraud. (Doc. 15 at 12, Compl. ¶¶ 125–33.) But the complaint makes only conclusory references to mail and wire fraud and offers no specifics. These conclusory allegations cannot support Georgia RICO claims under either Georgia law or Eleventh Circuit precedent. *See Am. Dental Ass'n.*, 605 F.3d at 1291 (11th Cir. 2010) ("A plaintiff must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud."). However, because Hodges failed to adequately brief Hi–Tech's argument about mail and wire fraud, the Court declines to dismiss the RICO claims on these grounds.

 Hodges also contends that Hi–Tech failed to plead proximate cause. (Doc. 11 at 14–15.) To plead proximate cause for a Georgia RICO claim, the plaintiff must create a connection between the injury and the predicate acts. *Longino v. Bank of Ellijay*, 228 Ga.App. 37, 491 S.E.2d 81, 85 (1997) ("A plaintiff cannot allege merely that an act of racketeering occurred and that he lost money. He must show a causal connection between his injury and the predicate acts.") Hodges argues:

> Although Plaintiffs generally allege that they lost sales and profits, Plaintiffs do not identify any products Plaintiffs failed to sell or how Defendant's alleged conduct caused any such lost sales or lost profits.

(Doc. 11 at 15.) Here, the Court agrees with Hodges: it cannot make any causal connections or reasonable inferences about proximate cause, because Hi–Tech has simply not alleged facts to support its claims. The Court therefore **GRANTS** Hodges' motion to dismiss Counts V through VII, but **GRANTS** Hi–Tech leave to amend within twenty-one (21) days of this order.

The Court will provide some guidance in the event that Hi–Tech chooses to amend its complaint. Plaintiffs cannot simply include magic words such as "conspiracy" and "mail fraud" in a complaint to plead a claim where years of relatively clear, consistent jurisprudence have set forth clear standards. Those standards require plaintiffs to put defendants on notice of specific acts, statements, documents, places, and people behind the magic words. *Am. Den-*

*tal Ass'n.*, 605 F.3d at 1291. Hi–Tech improperly incorporates the rest of the complaint by reference, and alleges a nebulous conspiracy. Hi–Tech's present complaint does not plead proximate cause, and also fails to allege precise statements, documents, or misrepresentations, the time place, and people responsible for making them, and how the statements misled them. Any amended complaint will address all of these deficiencies.

## C. HODGES FAILS TO PLEAD ITS COUNTERCLAIMS WITH PARTICULARITY.

Finally, the Court turns to the issue of Hodges' patent counterclaim. Along with its answer, Hodges asserted counterclaims seeking declaratory judgments of non-infringement and invalidity of the '446 Patent. (Doc. 12 at 10–13.) Hi–Tech argues that the counterclaims should be dismissed because Hodges did not plead any facts to support its claims. It contends that the abrogation of Rule 84 and Form 18 subjects patent claims to the pleading requirements set forth in *Iqbal* and *Twombly*. (Doc. 16 at 5–7.) Hodges counters that even after the abrogation of Rule 84 and Form 18, pleading the statutory basis of a patent counterclaim without providing any factual support is still permissible. (Doc. 21, at. 8–9.) Hodges appeared to be so convinced of its position that it omitted from its Answer any factual basis for its counterclaims. It does ask for leave to amend should the Court agree that its claims are now subject to *Iqbal* and *Twombly*, and its counterclaims do not meet that standard in their current form.

Rule 84 and its forms, including Form 18, were abrogated in December 2015. *Robern, Inc. v. Glasscrafters, Inc.*, 206 F.Supp.3d 1005 (D.N.J. 2016). Prior to this event, the forms contained in Rule 84's appendices "illustrate[d] the simplicity and brevity that these rules contemplate." Fed. R. Civ. P. 84 as amended Dec. 1, 2007. "Form 18 require[d] little more than a conclusory statement alleging that the defendant infringed on the claimant's patent." *Graphic Packaging, Int'l., Inc. v. C.W. Zumbiel Co.*, 1:10–CV–3008–AT, 2011 WL 5829674, at *4 (N.D. Ga. Aug. 1, 2011). Therefore, before December 2015, courts generally found patent claims and counterclaims pled using Form 18 sufficient to satisfy Rule 8's pleading requirements. *See McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1356–57 (Fed. Cir. 2007); *Microsoft Corp. v. Phoenix Solutions, Inc.*, 741 F.Supp.2d 1156, 1158, 1162–63 (C.D. Cal. 2010).[12]

However, after the forms were abrogated, courts have almost unanimously held that all patent claims and counterclaims are subject to the pleading require-

---

12. However, the law was not entirely settled on the issue. Even prior to the abrogation of Rule 84 and Form 18, "[d]istrict courts, including in this circuit, have reached conflicting results" as to what extent the requirements of *Iqbal* and *Twombly* were applicable in patent cases. *Graphic Packaging, Int'l., Inc.*, 2011 WL 5829674, at *2. In *Graphic Packaging, Int'l.*, this Court held that "invalidity counterclaims and affirmative defenses that allege only their statutory bases are adequate to survive a Rule 12 motion challenging the sufficiency of the pleadings." *Graphic Packaging, Int'l., Inc.*, 2011 WL 5829674, at *3. The Court reasoned that "[s]uch pleadings conform with Rule 8 of the Federal Rules of Civil Procedure by giving the defendant fair notice of what the claim is and the grounds upon which it rests. Because the pleadings also meet the standard set out in the Federal Rules of Civil Procedure for pleading patent infringement claims, it would be inequitable to hold that they are nonetheless insufficient to state an invalidity counterclaim." *Id.* at *3. Finally, the Court noted that the Northern District of Georgia's patent local rules requirement for "an invalidity claimant to file a heightened pleading of invalidity contentions soon after it files its claims" gives defendants early notice of the factual predicate of the suit. *Id.* at *4, *see also* Patent L.R. 4, N.D. Ga.

ments of *Iqbal* and *Twombly.* *See, e.g. Robern, Inc.,* 206 F.Supp.3d at 1008–10 (analyzing the relationship between *Twombly/Iqbal* and Rule 84 and Form 18, and concluding that with the abrogation of Rule 84 and Form 18, the *Twombly/Iqbal* standard applies in all patent cases); *Raindance Tech. Inc. v. 10x Genomics, Inc.,* Case No. 15-152 RGA, 2016 WL 927143, at \*2 (D. Del. Mar. 4, 2016) (noting abrogation of Rule 84, applying *Twombly/Iqbal,* and granting motion to dismiss with leave to amend); *Tannerite Sports, LLC v. Jerent Enters., LLC,* Case No. 6:15-cv-00180-AA, 2016 WL 1737740, at \*3 (D. Or. May 2, 2016) ("[t]he salient fact is *Twombly/Iqbal* dictates direct infringement pleading standards as of December 1, 2015").

█ The Court agrees with the reasoning advanced by the vast majority of other courts confronted with this issue. Prior to the abrogation of Rule 84 and Form 18, "to the extent . . . *Twombly* and its progeny conflict[ed] with [Form 18] and create[d] different pleading requirements, the forms control[led]." *In re Bill of Lading Transmission and Processing Sys. Patent Litig.,* 681 F.3d 1323, 1334 (Fed. Cir. 2012). Form 18 served as an alternative to Rule 8, it did not serve to alter any "existing pleading standards or otherwise change the requirements of Civil Rule 8." Fed. R. Civ. P. Rule 84, Official Comment on 2015 amendment. The abrogation of Rule 84 and Form 18 merely eliminated what was once a "safe harbor [from *Iqbal* and *Twombly*] for direct infringement claims." *Ruby Sands, LLC v. American Nat'l Bank of Tex.,* Case No. 2:15-cv-1955-JRG, 2016 WL 3542430, at \*2 (E.D. Tex. June 28, 2016). The Court

finds that Hodges' counterclaims are subject to the pleading requirements set forth in Rule 8, as described in *Iqbal* and *Twombly.*

█ The Court holds that Hodges has not adequately pled its counterclaims under *Iqbal* because it offers no factual support for those counterclaims whatsoever. In its counterclaim for invalidity, Hodges asserts that its claims are grounded in the requirements for patentability as set forth in Sections 101, 102, 103, "and/or 112." (Doc. 10, ¶ 17.) Its legal conclusions do not provide any insight into how or why Hodges believes that its claims are grounded in the requirements for patentability. (Doc. 10, ¶¶ 18–19.) Its counterclaim for a declaratory judgment of non-infringement merely states, in essence, that it did not infringe on Hi–Tech's patent. (Doc. 10, ¶¶ 11–12.)

None of the cases that Hodges cites to for the proposition that it has adequately pled its counterclaims under *Iqbal* and *Twombly* are persuasive. *Graphic Packaging, Int'l., Inc.,* 2011 WL 5829674, at \*3.[13] Unlike the case at bar, the plaintiff in *Minsurg Int'l., Inc. v. Frontier Devices, Inc.* set forth allegations that contained the specific factual predicates that "describe[ed] how [the defendants] allegedly infringe[d] on the relevant patents." *Minsurg Int'l, Inc. v. Frontier Devices, Inc.,* No. 8:10-cv-1589-T-33EAJ, 2011 WL 1326863, at \*2. That case cited to another case where a complaint that stated with particularity the acts that constituted patent infringement. *Id.* (citing *FotoMedia Techs., LLC v. AOL, LLC,* Case No. 2:07-

---

**13.** Hodges' arguments about this Court's holding in *Graphic Packaging* are unavailing. In *Graphic Packaging,* the Court also based its holding on the fact that those counterclaims also complied with Form 18, and that the Northern District of Georgia's local rules provided an alternative means of providing notice of the claims. *Graphic Packaging, Int'l.,* 2011 WL 5829674, at \*3. Rule 84 and Form 18 no longer exist, so the Court's concern about the illogical and inequitable results that would have resulted from the application of *Iqbal* and *Twombly* in that case are moot. *Id.* at \*4.

cv-255, 2008 WL 4135906, at *1 (E.D. Tex. Aug. 29, 2008)).

The Court therefore **GRANTS** Hi-Tech's motion to dismiss Hodges' counterclaims, but also **GRANTS** Hodges leave to amend its counterclaims within twenty-one (21) days of this Order.

## III. CONCLUSION

For the foregoing reasons, the Court:

1. **GRANTS IN PART** and **DENIES IN PART** Hodges' Motion to Dismiss. [Doc. 11.] The Court **GRANTS IN PART** and **DENIES IN PART** the Motion as to Count II, III, and IV of Hi-Tech's complaint [Doc. 11]. Hi-Tech may proceed with its Lanham Act, Georgia Deceptive Trade Practices Act, and common law unfair competition claims to the extent that they are predicated on deceptive labeling, as discussed in this Order. Hi-Tech may not, however, proceed with these claims on the basis of its conclusions that SOS-500 is a "new drug" and a "prescription drug," because those decisions must be made in the first instance by the FDA.

2. The Court **GRANTS** Hodges' Motion to Dismiss Count V of Hi-Tech's complaint [Doc. 11]. The Court **GRANTS** Hi-Tech leave to amend its Georgia RICO claim by January 6, 2016.

3. The Court **GRANTS** Hi-Tech's Motion to Dismiss Hodges' counterclaims [Doc. 16]. The Court **GRANTS** Hodges leave to amend its counterclaims by January 6, 2016.

5. The Court **APPROVES** the Parties' Joint Preliminary Report and Discovery Plan ("JPRDP") [Doc. 27]. The time limits for adding parties amending the pleadings, filing motions, completing discovery, and discussing settlement are as stated in JPRDP. The Court also notes that the Parties apparently intend to submit a supplemental JPRDP within fourteen (14) days of this Order. (JPRDP, Doc. 27 at 6.)

The Court **DIRECTS** the parties to submit a supplemental JPRDP by January 6, 2016. That JPRDP should include a proposed schedule outlining how the parties believe discovery and litigation of the patent claims should proceed, identifying if and where the proposed schedule(s) depart from the Patent Local Rules.[14]

Finally, the Court presently believes that it should appoint a Special Master to oversee the patent litigation portion of this case. If the parties have any objection to the Special Master, they are **DIRECTED** to file such objections by January 6, 2016 and outline the reasons why they believe a Special Master is not appropriate or necessary for this matter. If they consent to the appointment of a Special Master, they are **DIRECTED** to each submit one (1) name for consideration to the Court by January 13, 2016. They should submit a resume of their proposed candidate.

The Court notes that it appointed Joseph W. Berenato, III as a Special Master in *Shire Development, LLC v. Osmotica Pharmaceutical Corp.*, Case No. 12-cv-903-AT, and the Court views his experience as potentially appropriate for this matter. The Court **REFERS** the parties to Docket Entry # 92 in the *Shire* matter to view the order of appointment of Mr. Berenato, which the parties may use as an example for their own proposed order of appointment.

**IT IS SO ORDERED** this 13th day of December, 2016.

---

**14.** For example, infringement contentions must typically be disclosed thirty (30) days after filing a JPRDP, and invalidity contentions must typically be made thirty (30) days after the disclosure of a plaintiff's infringement contentions. Patent L.R. 4.4.